UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

**HENRY SEARCY, JR.**,

        Plaintiff,

    v.

**UNITED STATES OF AMERICA**,

        Defendant.

Case No. 1:23-cv-03166 (TNM)

**MEMORANDUM OPINION**

Plaintiff Henry Searcy, Jr., proceeding pro se, sues officials at the U.S. Department of Agriculture (USDA) based on alleged mistreatment while he worked there. Because Searcy brings solely common law tort claims against officials acting in the scope of their employment, the United States has been substituted as Defendant.[1] The Government moved to dismiss the case for lack of subject matter jurisdiction. This motion is now ripe. And the Court will dismiss the case without prejudice.

I.

Searcy raises several grievances related to his employment at USDA, where he was the Coordinator for Chronically Underserved Rural Areas. Compl. ¶ 1. This position was part of the Office of Outreach and Community Engagement. *Id.* In November 2017, USDA circulated a memorandum stating that positions in the Office of Outreach and Community Engagement would be realigned with either the Office of External Affairs (OEA) or the new Rural

---

[1] The Attorney General, through his authorized representative, certified that the named Defendants were acting within the scope of their authority as federal officials at the time of the events alleged. *See* Westfall Certification, ECF No. 10-1. Substitution is therefore appropriate under 28 U.S.C § 2679(d)(3).

Development Innovation Center. *Id*. As part of this reorganization, Searcy's position was transferred to OEA. *Id*. ¶ 4. But agency officials assured Searcy that the realignment would not impact Searcy's duties and responsibilities. *Id*. ¶ 2.

Nonetheless, Searcy's duties did change. *Id*. ¶ 4. In October 2018, he learned that USDA did not have a budget for him to perform his previous duties. *Id*. ¶ 5. This was supposedly because Marie Wheat, the Director of OEA, did not submit a budget request to fund Searcy's position. *Id*. ¶ 16; *see* 7 U.S.C. § 6941a. Wheat asked Searcy to assist with other OEA tasks, such as editing, processing, and reviewing Rural Development job project announcements in the Congressional Announcement Tracking System. *Id*. ¶ 5. But Searcy was uninterested in performing these functions. *Id*. ¶ 10.

Following the realignment, Searcy's interactions with Wheat became contentious. *Id*. In his July 2019 performance review, Wheat told Searcy that she "needed to get more out of him" and asked what other skills he could lend to OEA. *Id*. But when Searcy suggested that she allocate OEA funds to his position, she replied, "You do not get to spend OEA funds!" *Id*. In October 2019, Wheat accused him of being absent without leave and demanded evidence that he worked for a weeklong period early that month. *Id*. ¶ 11. That same month, she removed Searcy from the U.S. Interagency Council for the Homeless and put a political appointee in his place. *Id*. ¶ 12.

Searcy's realignment also led to conflict over office real estate. Searcy alleges that, starting in January 2019, Wheat and another agency employee maliciously "conspired" to reassign his desk to different locations within the building. *Id*. ¶ 8. At one point, Wheat allegedly "kicked in the door" and yelled at Searcy to "get out" of his seat and "sit in room 4807." *Id*. ¶ 12. All told, Searcy was forced to change offices five times in eight months. *Id*.

2

At some point following the realignment, Searcy contacted human resources to obtain a copy of his position description. He alleges that the position description he received had been "falsified, altered and/or mutilated." *Id.* ¶ 13. According to Searcy, the titles of certain supervisors had been replaced and references to his being located within an "RD Mission Area" had been removed. *Id.* Searcy later filed a "whistleblower complaint" based on these supposed discrepancies. *Id.*

Searcy filed this action in October 2023. *See generally* Compl. He raises four common law tort claims: tortious interference with employment (Count 1), negligent infliction of emotional distress (Count 2), negligence (Count 3), and a claim for punitive damages (Count 4). *See* Compl. ¶¶ 40–62. In February 2024, the Government moved to dismiss for lack of jurisdiction. Mot. to Dismiss (MTD), ECF No. 10.

## II.

To survive a motion to dismiss under Rule 12(b)(1), Searcy must show that the Court has jurisdiction. *See Khadr v. United States*, 529 F.3d 1112, 1115 (D.C. Cir. 2008). At this stage, the Court "assume[s] the truth of all material factual allegations in the complaint and construe[s] the complaint liberally, granting plaintiff the benefit of all inferences that can be derived from the facts alleged." *Am. Nat'l Ins. Co. v. FDIC*, 642 F.3d 1137, 1139 (D.C. Cir. 2011) (cleaned up). But because jurisdictional challenges go to the Court's power to hear a case, the Court must give the plaintiff's factual allegations closer scrutiny than would be required for a 12(b)(6) motion. *Schilling v. Speaker of U.S. House of Reps.*, 633 F. Supp. 3d 272, 275 (D.D.C. 2022). The Court is thus not limited to the allegations contained in the complaint. *Id.*

Because Searcy is proceeding pro se, the Court must construe his Complaint liberally, holding it to a less stringent standard than that applied to formal pleadings drafted by lawyers.

*Erickson v. Pardus*, 551 U.S. 89, 94 (2007).  But even pro se litigants must meet the minimum pleading standards required by the Federal Rules and the Constitution.  *See Yellen v. U.S. Bank, Nat'l Ass'n*, 301 F. Supp. 3d 43, 47 (D.D.C. 2018).  That includes rules for alleging subject matter jurisdiction.  *See Fontaine v. JPMorgan Chase Bank, N.A.*, 42 F. Supp. 3d 102, 106 (D.D.C. 2014).

### III.

The Government contends that the Court lacks jurisdiction for two reasons.  First, the Acting Secretary of Labor determined that Searcy's claims fall under the Federal Employees Compensation Act (FECA), which is exclusive of any other liability.  And second, even if Searcy's claims fall outside FECA, he did not exhaust his administrative remedies—a prerequisite to bringing tort claims against the United States under the Federal Tort Claims Act (FTCA).  The Court agrees with the Government on both grounds.

### A.

Searcy's claims against the United States sound in tort.  Though sovereign immunity generally shields the federal government from tort liability, the FTCA grants a limited waiver of sovereign immunity for suits seeking money damages based on torts committed by federal employees in the course of their employment.  *Davis v. United States*, 973 F. Supp. 2d 23, 28 (D.D.C. 2014); 28 U.S.C. § 1346.  But this waiver does not greenlight any tort suit against the federal government.  Certain statutory regimes—here, FECA—limit FTCA's waiver of sovereign immunity for claims that fall under their umbrella.  *See* 5 U.S.C. § 8116(c) (establishing that the "liability of the United States . . . under FECA . . . is exclusive").  If a claim can be brought under FECA, the plaintiff must satisfy its requirements—no matter whether FTCA waives immunity.  *See Lockheed Aircraft Corp. v. United States*, 460 U.S. 190, 193–94

4

(1983) (explaining that FECA was "designed to protect the Government from suits under statutes, such as the [FTCA], that had been enacted to waive the Government's sovereign immunity").

FECA provides the exclusive remedy for any "civil officer or employee in any branch of the Government of the United States," 5 U.S.C. § 8101(1)(A), seeking compensation for the "disability or death of an employee resulting from personal injury sustained while in the performance of his duty," *id*. § 8102(a).  When a federal employee makes an injury claim covered by FECA, he "must bring [his] claim to the Secretary of Labor in lieu of filing a claim in federal court."  *Sullivan v. United States*, 2006 WL 8451987, at *3 (D.D.C. June 22, 2006); *see also Daniels-Lumley v. United States*, 306 F.2d 769, 771 (D.C. Cir. 1962) ([T]he Secretary of Labor must be given the primary opportunity to rule on the applicability of [FECA].").  The Secretary is charged with determining whether the employee's injuries fall within FECA's "exclusive statutory scheme."  *Barnes v. United States*, 285 F. Supp. 3d 78, 81 (D.D.C. 2018).

The Secretary's decision on the scope and applicability of FECA coverage is "not subject to review by any court."  *Daniels-Lumley,* 306 F. 2d at 770.  Only "[i]f the Secretary determines that the plaintiff's claim is fundamentally outside the scope of the FECA, [can] the claim . . . proceed under the FTCA in district court."  *Klugel v. United States*, No. 06-cv-01886, 2009 WL 10692972, at *1 (D.D.C. Aug. 18, 2009) (quoting *Mathirampuzha v. Potter*, 548 F.3d 70, 81 (2d Cir. 2008)).

Searcy does not allege that he has presented his claims to the Acting Secretary of Labor for her to make a FECA determination.  *See generally* Compl.  Nor does the Acting Secretary have any record of Searcy bringing any FECA claim.  Decl. of Adam Calendrillo (Calendrillo Decl.) ¶ 13, ECF No. 10-2.  After Searcy filed this case, the Acting Secretary of Labor, through

her designee, reviewed the Complaint and determined that since Searcy's "emotional injuries appear to be the result of error and abuse in an administrative action . . . there is a substantial likelihood of FECA coverage." *See* Calendrillo Decl., Ex. A. at 3, ECF No. 10-3. Thus, according to the Acting Secretary, FECA provides the exclusive remedy for Searcy's claims. *See* 5 U.S.C. § 8116(c). This determination is unreviewable. *Daniels-Lumley*, 306 F.2d at 770. So the Court must dismiss Searcy's tort claims for lack of jurisdiction.

B.

Even if Searcy's claims were not barred by FECA, the Court lacks jurisdiction because Searcy has failed to exhaust his administrative remedies under FTCA. Before bringing an FTCA case for money damages, the claimant must have "first exhausted his administrative remedies." *McNeil v. United States*, 508 U.S. 106, 107 (1993) (quoting 28 U.S.C. § 2675(a)). A claimant satisfies this requirement by providing the federal agency with both a "written notification of an incident," and "a claim for money damages in a sum certain." 28 C.F.R. § 14.2; *see also GAF Corp. v. United States*, 818 F.2d 901, 919 (D.C. Cir. 1987) (explaining that these requirements "enable the agency to investigate and ascertain the strength of a claim . . . [and] determine whether settlement or negotiations to that end are desirable").

Searcy has not alleged that he first presented his claims in writing to the federal agency that caused his injury before suing here. Instead, he argues that his FTCA claims are exhausted because he filed an Equal Employment Opportunity complaint with the agency's EEO counselor and a subsequent reprisal complaint with the Merit Systems Protection Board. Compl. ¶¶ 19, 23; Opp'n to MTD at 4, ECF No. 14. Not so.

Searcy's administrative complaints appear to be related to his realignment. *See, e.g.*, Opp'n, Ex. J., EEOC Dec. on Req. for Reconsideration, ECF No. 14-1, pp. 3; Ex. 9, Affidavit of

Marie Wheat, ECF No. 14-1, pp. 216.  But FTCA requires the claimant to first "present[] *the claim* to the appropriate Federal agency." 28 U.S.C. § 2675(a).  Searcy's presentation of other claims—for example, race discrimination in employment—does not satisfy FTCA's exhaustion requirement.  Even if these other administrative complaints could be construed as FTCA administrative claims, "they do not allege the torts at issue in this case and do not seek the same damages." *Chien v. United States*, No. 17-cv-2334, 2019 WL 4602119, at *7 (D.D.C. Sept. 23, 2019).  Nor do these previous administrative complaints—so far as the Court can determine from Searcy's omnibus exhibits—set forth a "sum certain" in damages, which is required for FTCA exhaustion.  *See Cureton v. U.S. Marshals Serv.*, 322 F. Supp. 2d 23, 27 (D.D.C. 2004) (dismissing claim as unexhausted when administrative claim did not provide "sum certain" in damages).[2]

All in all, though Searcy has made some attempts to exhaust related claims against USDA officials, he has not shown—either in the Complaint or attached exhibits—that he has satisfied the specific requirements for FTCA exhaustion.  "Men must turn square corners when they deal with the Government.  If it attaches even purely formal conditions to its consent to be sued those conditions must be complied with." *Rock Island A. & L.R. Co. v. United States*, 254 U.S. 141, 143 (1920).  This principle applies even to plaintiffs proceeding pro se.  *See Adeogba v. Migliaccio*, 266 F. Supp. 2d 142, 146 (D.D.C. 2003) ("[A] pro se plaintiff must exhaust his administrative remedies prior to filing an action under the FTCA.").  So the Court lacks jurisdiction over Searcy's unexhausted FTCA claims.

---

[2]  Besides being unexhausted, Searcy's claims for tortious interference are barred by FTCA's intentional tort exception.  *See* 28 U.S.C. § 2680(h).  Searcy's claim for punitive damages is also barred because the United States has not waived sovereign immunity to be sued for punitive damages under the FTCA.  *Tri-State Hosp. Supply Corp. v. United States*, 341 F.3d 571, 577 (D.C. Cir. 2003) (citing 28 U.S.C. § 2674).

## IV.

For these reasons, the Court will grant Defendant's Motion to Dismiss. A separate order will issue today.

Dated: May 14, 2024                               TREVOR N. McFADDEN, U.S.D.J.